**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MARIA S. BOCANEGRA | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. _____ |
| v. | ) |
| | ) |
| DOVENMUEHLE MORTGAGE INC. | ) |
| and BMO HARRIS BANK N.A. | ) |
| | ) |
| Defendants | ) |

**COMPLAINT**

Plaintiff, Maria S. Bocanegra ("Plaintiff"), by and through undersigned counsel, bring this action against Dovenmuehle Mortgage, Inc. ("DMI") and BMO Harris Bank, N.A. ("BMO," and together with DMI, "Defendants").

**NATURE OF THE CASE**

1.       This Complaint is filed and these proceedings instituted against DMI and BMO under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §2601 *et. seq.*, to recover actual, statutory, and punitive damages, court costs, and attorney's fees by reason of the Defendants' violations of 12 U.S.C. §2605 and Regulation X, 24 C.F.R. §3500.1 *et. seq*. Plaintiff also seeks declaratory relief pursuant to 28 U.S.C. §§2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure, and appropriate injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure in order to prevent irreparable harm.  Through their own bungled recordkeeping, BMO failed to update Plaintiff's address on her account related to her mortgage loan and failed to notify her that the servicing of her loan was being transferred to DMI.

1

2.     In turn, DMI falsely and mistakenly put the Plaintiff's mortgage loan into a delinquency and loss mitigation status despite the fact that the Plaintiff paid faithfully on her loan.  DMI ignored Plaintiff's repeated attempts to explain and document to DMI that Defendants had made a huge error and that DMI had no basis whatsoever to put the Plaintiff's loan into a delinquency and loss mitigation status.  DMI failed to respond properly to "qualified written requests" by and on behalf of the Plaintiff, and DMI failed to take corrective action with respect to the servicing of the Plaintiff's mortgage loan.  This action also is predicated upon Defendants' conversion of the Plaintiffs' loan payments and its negligence as well as unfair and deceptive behavior towards Plaintiff and other consumers in Illinois.

## JURISDICTION

3.     This Court has jurisdiction over this action pursuant to 12 U.S.C. § 2614) and 28 U.S.C. § 1331, and has supplemental jurisdiction of the state law claims regarding the same transaction and events under 28 U.S.C. § 1367(a).

4.     Venue is proper in this District because parts of the acts and transactions occurred here, and the Defendant transacts substantial business here.

## PARTIES

5.     Plaintiff, Maria S. Bocanegra, is a natural person who resides in Illinois.

6.     Defendant, BMO Harris Bank, NA is a national bank with offices in the state of Illinois. BMO makes and services numerous loans which are "federally related mortgage loans" as defined in 12 U.S.C. §2602, in that they are secured by a lien on residential real property designed principally for the occupancy of from one to four families, and in that they are made by "creditors" which make or invest in residential real estate loans aggregating more than $1,000,000 per year.  Plaintiff's loan is one such loan.

7.      Defendant, Dovenmuehle Mortgage Inc.  is a Delaware corporation that conducts business in Illinois. DMI services numerous loans which are "federally related mortgage loans" as defined in 12 U.S.C. §2602, in that they are secured by a lien on residential real property designed principally for the occupancy of from one to four families, and in that they are made by "creditors" which make or invest in residential real estate loans aggregating more than $1,000,000 per year.  Plaintiff's loan is one such loan.

**FACTS SUPPORTING CAUSES OF ACTION**

8.      On July 18, 2018, Plaintiff closed on a residential real estate loan (the "Loan") on her home located at 233 E. Erie St., Unit 1207, Chicago, IL 60611 (the "Property"). True and correct copies of the Home Equity Line of Credit Agreement and Disclosure Statement (the "Note") and the Mortgage (the "Mortgage") are attached hereto as Exhibits A & B.

9.      The lender under the Note was BMO and the initial servicer of the Loan.

10.     After closing on the Loan, Plaintiff began faithfully making payments to BMO on her Loan.

11.     On March 31, 2020, Plaintiff moved to Aurora, Illinois. When she moved, she signed up for mail forwarding service through the United States Post Office.

12.     When Plaintiff moved, she kept the Property and continued to make her loan payments to BMO.

13.     Between March 31, 2020, and August 17, 2020, Ms. Bocanegra repeatedly called BMO to request that they accept an address change request over the phone and requested that they send her monthly mortgage statements to the correct address in Aurora, Illinois.

14.     Ms. Bocanegra did not receive a monthly mortgage statement for her payment due May 2020 because BMO sent the monthly statement to the wrong address.

15.     After Ms. Bocanegra realized she missed her May 2020 payment, she contacted BMO. BMO acknowledged that she moved and reviewed her file. Because she had never been late on a payment, BMO agreed to reverse the charge for Ms. Bocanegra's late payment.

16.     Ms. Bocanegra did not receive a monthly mortgage statement for her payment due June 2020 payment because BMO sent the monthly statement to the wrong address.

17.     After Ms. Bocanegra realized she missed her June 2020 payment, she again contacted BMO. BMO again acknowledge that she moved and reviewed her file. They refused, however, to update the address change in their files because Ms. Bocanegra could not remember her PIN number. The BMO representative did, however, have no problem discussing the details of her account, accepted a payment and, again, waived the late fee.

18.     When Ms. Bocanegra failed to receiver the monthly statement for July 2020, she again called BMO.

19.     BMO informed her that she was required to go into a local BMO branch and change her address manually with a teller.

20.     Ms. Bocanegra promptly drove more than an hour to the closest BMO branch to change her address with the teller. The teller informed her that the address change would be effective immediately.

21.     Ms. Bocanegra did not receive her monthly mortgage statement for August 2020 because BMO sent the monthly mortgage statement to the incorrect address.

22.     On August 17, 2020, after the five months of not receiving her monthly mortgage statement at the proper address, Plaintiff called BMO and made a mortgage payment in the amount of $115.00 via Chase bill pay. A screenshot of the August 17, 2020, payment is attached

to the Notice of Error (the "Notice of Error") provided to BMO and DMI on October 6, 2020. A true and correct copy of the Notice of Error is attached hereto as Exhibit C.

23.     While on the phone the representative of BMO represented to her that BMO would waive the late fee for the payment due to the mix up. The BMO representative also manually updated Plaintiff's address in the system.

24.     While on the August 17, 2020, call with BMO, the BMO representative informed Plaintiff of the amount of her September payment.

25.     On August 30, 2020, Plaintiff made a payment via Chase bill pay in the amount of $64.14 for her September payment. A screenshot of the August 30, 2020 payment is attached to the Notice of Error.

26.     On September 11, 2020, BMO transferred the servicing of Plaintiff's Loan to DMI. Prior to the servicing transfer, BMO failed to properly notify Plaintiff that the servicing of her Loan was being transferred to DMI.

27.     DMI never sent a notice to Plaintiff that it was taking over the servicing for her Loan.

28.     On September 25, 2020, DMI sent Plaintiff's monthly mortgage statement to the Property instead of the address on file for Plaintiff. The September statement inaccurately reflected that Plaintiff had failed to make her September payment and demanded that she pay $124.15.

29.     After failing to credit her account for the September payment, DMI consistently misapplied Plaintiff's monthly mortgage payments from September 2020 to today. Indeed, by its own admission, DMI has been misapplying Plaintiff's mortgage payments since it took over servicing duties from BMO. Specifically, DMI admitted in a letter to Plaintiff that:

5

> The first payment we received from you after the servicing transfer was on October 23, 2020 and was applied to your September 2020 payment. On November 2, 2020 we received a payment in the amount of $65.00. This payment was applied allocating $4.13 towards your September 2020 payment, $60.01. towards your October 2020 payment, and $.86 towards your November 2020 payment. On December 1, 2020, we received a payment in the amount of $64.75. This payment was applied allocating $63.29 towards your November 2020 payment, and $.86 towards your December 2020 payment. On January 5, 2021, we received a payment in the amount of $60.01. This payment was applied to your December 2020 payment. On February 9, 2021 we received a payment of $74.70. This payment was applied allocating $1.21 towards your December 2020 payment, $60.01 towards you January 2021 payment, and $13.48 towards your February 2021 payment.

The above text is an excerpt from a letter dated March 31, 2021 from DMI to Plaintiff in response to a complaint she filed with the Consumer Financial Protection Bureau (the "CFPB") after DMI refused (and still refuses) to correct the errors that are the subject of this Complaint. A true and correct copy of the March 31, 2021 letter is attached hereto as Exhibit D.

30.     On substantially all of the monthly mortgage statements received by Plaintiff between September 2020 and today, DMI has attempted to charge a finance charge, late fee or annual fee that are not properly chargeable to Plaintiff's account. Specifically, DMI has charged:

      A.  In September 2020 an improper past due amount of $64.14;

      B.  In October 2020, an improper past due amount of $64.14;

      C.  In November 2020, an improper past due amount of $63.29;

      D.  In December 2020, an improper past due amount of $61.22;

      E.  In January 2021, late charges in the amount of $20.00 and an improper past due amount of $61.22;

      F.  If February 2021, late charges in the amount of $20.00 and an improper past due amount of $81.22;

True and correct copies of Ms. Bocanegra's monthly mortgage statements from September 2020 through March 2021 are attached hereto as Exhibits E-J.

31.     Because Plaintiff's Loan is a HELOC, she is only charged interest on the outstanding principal amount outstanding on the Loan. For that reason, the Defendants' failure to timely credit her account has caused her to pay interest she does not owe as the principal on her Loan would have been reduced had Defendants timely credited her account.

32.     On October 6, 2020, at the direction of a representative of DMI, Plaintiff sent a Notice of Error to DMI at the email address provided in DMI's "yourmortgageonline.com" platform. *See* Exhibit C.

33.     DMI failed to respond until January 29, 2021 and even then the response was solely to acknowledge that it had received her "inquiry." A true and correct copy of the January 29, 2021 letter from DMI to Plaintiff is attached hereto as Exhibit K.  DMI never responded substantively to the Notice of Error.

34.     On February 2, 2021, DMI put Plaintiff's Loan in loss mitigation status and sent her a loss mitigation letter (the "Loss Mitigation Letter") containing threats of foreclosure and the loss of her home. A true and correct copy of the loss mitigation letter is attached hereto as Exhibit L.

35.     On February 7, 2021, Plaintiff filed a complaint with the CFPB.

36.     On March 31, 2021, DMI responded to the CFPB complaint (the "March 31, 2021 Communication"). Exhibit D. In the March 31, 2021 response letter, DMI admitted its bungled servicing of Plaintiff's Loan and claimed to have fixed some but not all of the errors.

37.     On April 30, 2021, DMI sent a monthly mortgage statement to Plaintiff, the statement contains a demand for $58.10 in late payments (the "April 30, 2021 Communication"). A true and correct copy of the April 30, 2021 Communication is attached hereto as Exhibit M.

38.     Expecting the error to be fixed, Plaintiff made her typical monthly payment of $64.14.

39.     On May 17, 2021, Plaintiff logged onto her account only to see that the issues have not been fixed and DMI is making demand for $58.10 in late fees and has failed to credit her account for the May 2021 payment.

40.     During this entire period, Defendants have been making negative credit reports to the credit reporting agencies reporting that Plaintiff was late on making payments on her Loan.

41.     Further, Defendants have been charging interest on Ms. Bocanegra's account for outstanding amounts on her Note that were not due and payable.

## CAUSES OF ACTION

### COUNT I - TILA

### (Violation of TILA (Reg. Z § 1026.36(c)(2)) against BMO and DMI)

42.     Plaintiff restates all prior paragraphs as though fully set forth herein.

43.     Both BMO and DMI are "servicers" as that term is defined in 12 CFR § 1024.2(b)(22)(5).

44.     Both BMO and DMI failed to timely credit Plaintiff's payments on her account.

45.     DMI continually charged "pyramiding" late fees to Plaintiff by charging a late fee even though Plaintiff's monthly payments were sufficient to cover the principal and interest owed under the Loan.

46.     Reg. Z. § 1026.36(c)(2) states explicitly that "in connection with a closed-end consumer credit transaction secured by a consumer's principal dwelling, a servicer shall not impose any late fee or delinquency charge for payment if:

**(i)** Such a fee or charge is attributable solely to failure of the consumer to pay a late fee or delinquency charge on an earlier payment; and

**(ii)** The payment is otherwise a periodic payment received on the due date, or within any applicable courtesy period."

47.     The Mortgage, the CFPB, the FTC and the FRB consistently define a periodic payment as payment of interest and principal on the note when due.

48.     Thus, DMI was not justified in charging late penalties for Plaintiff's failure to make additional payments for late fees, annual fees or finance charges that were not properly chargeable to her account.

49.     Further, Defendant's failure to timely credit her account caused her to pay more in principal and interest payments than she actually owed.

50.     Defendants' improper charges to Plaintiff's account and failure to properly and timely apply Plaintiff's payments are thus a violation of TILA's Reg. Z.

51.     Plaintiff has suffered damage resulting from Defendants' violation of TILA's Reg. Z.

WHEREFORE, the Plaintiff requests that the Court:

A.   Grant judgment in the Plaintiff's favor against Defendants;

B.   Award the Plaintiff actual and statutory damages in an amount to be determined at trial;

C.   Award Plaintiff's reasonable attorneys' fees and costs; and

D.   Award any other relief the Court deems equitable and just.

**COUNT II - RESPA**

**(Violations of RESPA, 12 U.S.C. § 2605 and 24 C.F.R. §3500 against BMO and DMI)**

52.     Plaintiff restates all prior paragraphs as though fully set forth herein.

53.     Defendants are servicers of a federally related mortgage loan within the meaning of RESPA.

54.     Defendants failed to notify Plaintiff that the servicing of her Loan was being transferred from BMO to DMI.

55.     Plaintiff's written requests for information about her account and correction of Defendant's numerous errors were "qualified written requests" within the meaning of RESPA.

56.     DMI failed to respond in a proper and timely way to Plaintiff's "qualified written requests" for information about, and corrections to, her Mortgage account, in violation of 12 U.S.C. § 2605(e)(2)(A).

57.     DMI failed to make appropriate corrections to Plaintiff's account in response to the qualified written request, including the crediting of any late charges or penalties, and failing to transmit written notice of such corrections to Plaintiff no later than 60 days after receipt of Plaintiff's qualified written request in violation of § 2605(e)(2)(A) of RESPA.

58.     DMI failed to provide Plaintiff with the information and documentation requested, or an explanation why the information sought was unavailable, no later than 60 days after receipt of Plaintiff's Qualified Written Request in violation of § 2605(e)(2)(C) of RESPA.

59.     DMI refused to cease its collection efforts and instead placed Plaintiff's Loan in loss mitigation status after receiving Plaintiff's Qualified Written Request in violation of § 2605(e)(2) of RESPA.

60.     DMI violated RESPA, 12 U.S.C. 2605(e)(3), by providing information to consumer reporting agencies regarding overdue payments allegedly owed by Plaintiff that were related to her Qualified Written Request.

61.     DMI failed to correct Plaintiff's account in violation of 12 U.S.C. §2605(e)(2) and 24 C.F.R. §3500.21(e)(3) (1996).

62.     DMI reported to credit reporting agencies that Plaintiff was overdue and delinquent, in violation of U.S.C. §2605(e)(4)(i).

63.     DMI refused to cease its collection efforts and demands by letter and telephone collection harassment after receiving qualified written request letters from or on behalf of Plaintiff, in violation of 12 U.S.C. §2605(e)(2).

64.     DMI failed to conduct an appropriate investigation after receiving qualified written request letters from or on behalf of Plaintiff, in violation of 12 U.S.C. §2605(e)(2).

65.     DMI have engaged in a pattern or practice of non-compliance with the requirements of the mortgage servicing provisions of RESPA as set forth in 12 U.S.C. §2605.

66.     Plaintiff has suffered extensive damages, including but not limited to an unlawfully increased loan balance, being required to pay interest that was not owed, diminished credit prospects due to Defendants' false credit reporting, and aggravation and inconvenience due to Defendants' continual failure to correct its own errors in regard to Plaintiff's loan. WHEREFORE, the Plaintiff requests that the Court:

     A. Grant judgment in the Plaintiff's favor against Defendants;

     B. Award Plaintiff actual, punitive and statutory damages in an amount to be determined at trial;

     C. Award Plaintiff reasonable attorneys' fees and costs; and

D.  Award any other relief the Court deems equitable and just.

## COUNT III - NEGLIGENCE

67.     Plaintiff restates all prior paragraphs as though fully set forth herein.

68.     Defendants owed a duty to Plaintiff to service the Loan in conformity with Federal and state laws regarding servicing of a loan secured by a borrower's primary residence and to refrain from making or taking false, deceptive or unfair acts and/or statements in the service of the Loan.

69.     Defendants breached their duty to Plaintiff by charging Plaintiff amounts that she does not owe, failing to credit her payments to her account, disregarding Plaintiff's statements that she had been unfairly charged, ignoring her Notice of Error, harassing and intimidating Plaintiff and placing her Loan in loss mitigation status under false pretenses.

70.     Defendant's actions are the direct and proximate cause of damages suffered by the Plaintiff.

71.     Plaintiff has suffered actual monetary damages as well as pain and suffering as a result of Defendant's conduct.

WHEREFORE, the Plaintiff requests that this Honorable Court:

A.  Grant judgment in her favor against Defendants;

B.  Award Plaintiff actual and punitive damages in an amount to be determined at trial;

C.  Award Plaintiff's reasonable attorneys' fees and costs; and

D.  Award any other relief this Honorable Court deems equitable and just.

## COUNT IV – ICFA

**(Violations of ICFA, 815 ILCS 505, *et seq*. against BMO and DMI)**

71.     Plaintiff restates all prior paragraphs as though fully set forth herein.

72.     Plaintiff contracted with BMO any by assignment DMI for the provision of mortgage loan services for her personal use.

73.     Plaintiff used the proceeds of the subject loan to pay for and improve the Property, which she occupied as her personal residence.

74.     Plaintiff is thus a "consumer" as defined under Sections 1(c) and (e) of ICFA.

75.     Plaintiff is also a "person" as defined under Sections 1(c) and (e) of ICFA.

76.     Section 2 of ICFA prohibits unfair or deceptive practices and states, in relevant part, as follows:

> **Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of such material fact, or the use or employment of any practice described in section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.**

77.     At all relevant times, BMO and DMI were engaged in trade or commerce of loan servicing within Illinois.

78.     BMO and DMI each provided their loan servicing services directly to Plaintiff who made her payment to and communicated with BMO and DMI regarding her Loan.

79.     DMI acted as the agent for each of BMO and dealt with Plaintiff directly on BMO's behalf.

80.     DMI's actions were used by BMO in an effort to collect amounts alleged to be owed under the Loan.

81.     Specifically, BMO's and DMI's deceptive and unfair practices and acts were done in a deliberate effort to bully and intimidate Plaintiff into abandoning her rights to the Property so that the property could be sold as collateral for the Mortgage, with the proceeds being used to satisfy amounts alleged to be outstanding on the Loan.

82.     While engaged in trade or commerce, BMO and DMI committed the unfair acts or practices set forth below. These acts or practices were carried out without legal or factual basis, in direct contravention of Federal and Illinois law, and in violation of internal and regulatory guidelines.

83.     It was unfair for BMO and DMI to:

   A.  Violate RESPA by refusing to cease its collection efforts and instead initiating loss mitigation and threatening foreclosure after receiving Plaintiff's Qualified Written Request;

   B.  Violate RESPA by providing information to consumer reporting agencies regarding overdue payments allegedly owed by Plaintiff that were related to her Qualified Written Request;

   C.  Violate RESPA by failing to correct Plaintiff's account;

   D.  Violate RESPA by reporting to credit reporting agencies that Plaintiff was overdue and delinquent in payment of her Loan;

   E.  Violate RESPA by refusing to cease its collection efforts and demands by letter and telephone collection harassment after receiving qualified written request letters from or on behalf of Plaintiff;

   F.  Violate RESPA by refusing to conduct an investigation after receiving qualified written request letters from or on behalf of Plaintiff;

   G.  Violate RESPA by engaging in a pattern and practice of non-compliance with the requirements of the mortgage servicing provisions of RESPA;

   H.  Violate TILA by pyramiding late fees and improperly applying Plaintiff's Periodic Payments

   I.  Violate FCRA by making false and defamatory reports to credit reporting agencies regarding Plaintiff's account status;

J.   Violate the FDCPA by sending account statements and letters to Plaintiff that incorrectly asserted the amount of the debt she owed;

K.   Ignore written correspondence from Plaintiff explaining that she made timely periodic payments;

L.   Ignore Plaintiff's verbal and written notices that she paid her periodic payment and failing to timely credit her account;

M.   Ignore Plaintiff's demand that they review her account and fix servicing and accounting errors;

N.   Ignore proof of payment by Plaintiff;

O.   Ignore Plaintiff's Qualified Written Requests;

P.   Pyramid late charges on Plaintiff's account despite actual knowledge that such charges were not chargeable;

Q.   Charge late fees that were improper;

R.   Engage in a pattern and practice of subverting Illinois law and Federal law through predatory lending and servicing practices; and

S.   Engage in a pattern and practice of using intimidation, bullying, trickery, and false statements to encourage consumers to abandon their property rights and to evade compliance with RESPA, TILA and FCRA.

84.   BMO and DMI committed additional unfair acts and practices by:

A.   Failing to adequately train, manage, or supervise employees to ensure compliance with the law in the performance of loan servicing;

B.   Failing to provide training with respect to the IMFL and Illinois law;

C.   Failing to ensure that loan servicing instructions, policies, manuals, and procedures are transmitted to and reviewed by every employee in the services chain; and

D.   Creating an internal system where in employees are contractually required to perform loan servicing services that violate Illinois law and Federal law.

85.     BMO and DMI understand that any orders to improperly service a loan in violation of RESPA and TILA, to make negative reports to a credit reporting agency in violation of FCRA, and fail to investigate, respond to and address servicing errors directly contradicts the requirements of Federal and Illinois law and regulatory guidelines. BMO's and DMI's own methods ensure that operating in this manner will violate the protections afforded to consumers by Federal and Illinois law.

86.     The foregoing conduct is part of a pattern and practice of behavior in which BMO and DMI routinely engage as part of their business models. Their normal business practices are designed to disregard the law through an agreement to subvert the federal and Illinois law, ignore the possessory and ownership rights of consumers, and profit from placing a loan in loss mitigation status to coerce a borrower into giving up their property rights in their personal and real property when such action is unwarranted.

87.     BMO's and DMI's practices offend public policy, have a direct consumer nexus, affect consumers as a whole, and violate the basic possessory rights of consumers. These practices directly implicate consumer protection concerns because the conduct impacts and threatens consumers' home ownership and possessory rights and causes substantial emotional and financial harm to consumers by subverting legal protections afforded to Illinois residents.

88.     Further, consumers rightfully expect that businesses purporting to "service" their loans and mortgages will not (a) charge consumers amounts that they do not owe, (b) divert payments by consumers into suspense accounts and not credit such payments to the consumers' accounts, (c) ignore a consumers' statements that they have been unfairly charged, (d) ignore qualified written requests or CFPB complaints, (e) place a loan in loss mitigation status without the right to do so, and (f) harass or intimidate consumers.

89.     These practices are immoral, unethical, oppressive, and unscrupulous, and demonstrate an industry-wide practice of maximizing profits by intimidating consumers, ignoring consumers' legal rights, and profiting from foreclosures against consumers who give up on enforcing their rights in the face of such actions.

90.     These practices are an effort by BMO and DMI to prevent consumers from having effective legal representation by ignoring communications from consumers.

91.     The repeated practice of failing to properly allocate periodic payments and sending periodic statements to Plaintiff containing invalid late fees, annual fees, improper finance charges, improperly calculated interest and making demand for payments already made demonstrates a pattern of flouting state-mandated laws and public policies designed to protect Illinois residents generally.

92.     The conduct herein would equally violate the basic possessory rights of any other consumer who has been subjected to these practices. Any residential property owner who is subjected violations of TILA, RESPA, FCRA and the FDCPA will experience a violation of her rights or suffer harm, and likely both.

93.     BMO and DMI intended that Plaintiff rely upon their actions and to bully her into giving up possessory rights so BMO could monetize the subject property for its own benefit.

94.     BMO's and DMI's actions were deceptive and unfair and were designed to bully Plaintiff into making additional payments that he did not owe under the Note and Mortgage and to bully Plaintiff into giving up her possessory rights to the Property.

95.     Plaintiff suffered damages as a result of BMO's and DMI's misconduct, including as set forth above.

96.     WHEREFORE, Plaintiff requests that the Court:

A. Grant judgment in Plaintiff's favor against BMO and DMI;

B. Award Plaintiff actual and punitive damages in an amount to be determined at trial;

C. Award Plaintiff's reasonable attorneys' fees and costs pursuant to Section 10a(c) of the Consumer Fraud and Deceptive Business Practices Act; and

D. Award any other relief the Court deems equitable and just.

### COUNT V – FAIR DEBT COLLECTION PRACTICES ACT

### (AGAINST DMI)

97.    Plaintiff repeats, re-alleges, and incorporates by reference all foregoing paragraphs as though fully stated herein.

98.    § 1692e of the FDCPA states in relevant part that a debt collector, "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

99.    By the Loss Mitigation Letter, the March 31, 2021 Communication and the April 30, 2021 Communication DMI made false, deceptive and misleading representations in connection with the collection of a debt, in violation of §1692e, by making false and deceptive statements to Plaintiff by, at least:

a. Misrepresenting the amount of the debt owed by Plaintiff in violation of § 1692e(2) of the FDCPA;

b. Misrepresenting the legal status of the debt in violation of § 1692e(2) of the FDCPA;

c. Misrepresenting to Plaintiff that the property was subject to foreclosure in violation of § 1692e(4) of the FDCPA;

d. Misrepresenting to Plaintiff that it intended to initiate foreclosure proceedings in violation of the § 1692e(5)

e. Misrepresenting to Plaintiff she could participate in BMO's loss mitigation program in violation of § 1692e(10) of the FDCPA.

f. Using BMO's name on the letterhead instead of DMI's name and company information on the communication in violation of § 1692(14) of the FDCPA.

100. § 1692f of the FDCPA states in relevant part that a debt collector, "may not use any unfair or unconscionable means to collect or attempt to collect any debt."

101. DMI violated § 1692f(6) of the FDCPA by sending the Loss Mitigation Letter, the March 31, 2021 Communication and the April 30, 2021 Communication in effort to effect dispossession or disablement of Plaintiffs' Property while continuing to make demand for payment.

102. DMI violated § 1692f(8) of the FDCPA by sending letters on BMO letterhead and failing to identify that Loss Mitigation Letter, the March 31, 2021 Communication and the April 30, 2021 Communication came from DMI, not BMO.

103. § 1692d of the FDCPA states in relevant part that a debt collector, "may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of the debt."

104. DMI violated §1692d of the FDCPA by threatening a baseless foreclosure action against Plaintiff while continuing to make demand for payment.

105. § 1692j of the FDCPA states in relevant party that "[i]t is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection

of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating."

106.    DMI violated § 1692j by (1) sending the Loss Mitigation Letter, the March 31, 2021 Communication and the April 30, 2021 Communication on BMO letterhead (2) misrepresenting that the website on the communications was operated by BMO, and (3) introducing the BMO loss mitigation program.

108.    Plaintiff suffered damages proximately caused by DMI's misconduct, including as set forth above, and, including, but not limited to:

    a.    Financial harm;

    b.    Damage to reputation and libel;

    c.    Emotional distress, stress, anxiety, sleeplessness, and pain and suffering; and

    d.    Public humiliation and embarrassment.

109.    As a result of DMI's violations of the FDCPA, Plaintiff is entitled to an award of actual damages, statutory damages, costs, and reasonable attorney fees.

WHEREFORE, Plaintiff requests that this Honorable Court:

    a.    grant judgment in Plaintiff's favor against DMI;

    b.    award Plaintiff statutory and actual damages in an amount to be determined at trial;

    c.    award Plaintiff reasonable attorneys' fees and costs pursuant to Section 1692k of the FDCPA; and

    d.    award any other relief this Honorable Court deems equitable and just.

## **JURY DEMAND**

Plaintiff demands trial by jury.

Respectfully Submitted,

/s/ *Seth McCormick*
Seth McCormick (ARDC # 6309643)
Great Lakes Consumer Law Firm, LLC
73 W. Monroe St., Suite 100
Chicago, IL 60603
(312) 971-6787
seth@glclf.com

Bryan Paul Thompson
Robert W. Harrer
CHICAGO CONSUMER LAW CENTER, P.C.
33 N. Dearborn St., Suite 400
Chicago, Illinois 60602
Tel. 312-858-3239
Fax 312-610-5646
bryan.thompson@cclc-law.com
rob.harrer@cclc-law.com

*Attorneys for Plaintiff*